

## IN THE DISTRICT COURT IN AND FOR TULSA COUNTY
## STATE OF OKLAHOMA

ABOVE IT ALL ROOFING &
CONSTRUCTION, INC., an Oklahoma
corporation,

               Plaintiff,

vs.

SECURITY NATIONAL INSURANCE
COMPANY, a Delaware corporation,

               Defendant.



)
)
)
)
)
)
)
)
)
)
)

Case No. **CJ-2016-04372**

Judge **DAMAN CANTRELL**

**ATTORNEY LIEN CLAIMED**
**JURY TRIAL DEMANDED**

DISTRICT COURT
**FILED**
DEC - 1 2016

SALLY HOWE SMITH, COURT CLERK
STATE OF OKLA. TULSA COUNTY

## PETITION

COMES NOW the Plaintiff, Above It All Roofing & Construction, Inc. (**"Plaintiff"** or

**"Above It All"**), by and through counsel, and for its causes of action against Defendant Security

National Insurance Company (**"Defendant"** or **"Security National"**), alleges and states as

follows:



### Jurisdiction and Venue

1.     Plaintiff is an Oklahoma corporation located in Tulsa County, Oklahoma.

2.     Defendant is a Delaware corporation conducting business in Tulsa County,

Oklahoma.

3.     The Court has personal jurisdiction over the Defendant and jurisdiction over the

subject matter of this lawsuit.

### Facts Relevant to All Claims

4.     Security National issued a commercial lines policy of insurance, Policy No.

NA107340101 (**"Policy"**), to Above It All.

5.     The policy period for the Policy was from January 7, 2015 to January 7, 2016.

Exhibit "2"

6.     The Policy was in effect on the date of loss, February 3, 2015.

7.     Townmaker, L.L.C. ("**Townmaker**") hired Above It All for a project ("**Project**") to remove and replace the roof of a building owned by Townmaker located at 521 Kihehah, Pawhuska, Oklahoma 74056 ("**Building**").

8.     At the time Above It All was hired, the first floor business space of the Building was leased by Townmaker to Julie O'Keefe ("**O'Keefe**"), who operated in the leased space a business named The Cedar Chest.

9.     On or about February 3, 2015, Above It All began work on the Project.

10.     While tearing off the Building's old roof, an approximately 24 foot lead pipe fell through the ceiling of The Cedar Chest.

11.     The fallen pipe exposed the first floor of the Building to dirt and debris.

12.     On December 8, 2015, O'Keefe, individually and d/b/a The Cedar Chest, filed a lawsuit in Osage County, Oklahoma against Above It All ("**Osage County Action**"), asserting a claim of negligence against Above It All and claims of negligence and negligence *per se* against Townmaker. *See* Petition from Osage County Action, attached as **Exhibit A**.

13.     The Petition from the Osage County Action made, *inter alia*, the following allegations:

> 14. During the lease term with The Cedar Chest, Defendant Townmaker, L.L.C. undertook to make repairs and/or improvements to the building's roof.
>
> 15. Townmaker, L.L.C. hired Defendant Above It All Roofing to remove and replace the roof on the building being leased by The Cedar Chest.
>
> 16. Townmaker, L.L.C. did not inform either Plaintiff that the building and/or the leased space contained asbestos-containing material ("ACM") or presumed asbestos-containing material ("PACM").
>
> 17. Upon information and belief, Townmaker, L.L.C. did not maintain any records concerning the presence, location and quantity of ACM or PACM in

the building, nor did it determine the presence, location and quantity of ACM or PACM in the building.

18. Townmaker, L.L.C. did not inform either Plaintiff of the areas which contain ACM and/or PACM in which The Cedar Chest's employees may perform housekeeping activities which may be contacted during such housekeeping activities.

19. On February 3, 2015, during the term of the lease, The Cedar Chest was open for business. Without notice from either Defendant, Defendant Above It All Roofing and Construction began roofing construction on the building in which The Cedar Chest was located.

20. While tearing off the old roof, an approximately 24 foot lead pipe fell through the ceiling of The Cedar Chest and landed about 2 feet from one of The Cedar Chest's employees.

21. The roofers removed the pipe but left a hole in the ceiling and a broken ceiling tile hanging open from the ceiling of The Cedar Chest.

22. As removal of the old roof continued, silt, dirt, dust and debris fell from the hole in the ceiling, ceiling tiles and molding of the walls around the leased space of The Cedar Chest and covered the clothing, fixtures, display cases, furniture, and floor and floated in the air of The Cedar Chest's store exposing the employees of The Cedar Chest and Julie O'Keefe to the debris.

23. Neither Defendant placed a tarp or any other containment device on the second floor of the building to preclude the falling silt, dirt, dust and debris into The Cedar Chest's store.

24. The Cedar Chest requested a tarp or other containment device be placed on the second floor of the building. Defendant, Above It All Roofing, informed The Cedar Chest that it was too late to do so.

25. Defendant Townmaker, L.L.C. informed the Cedar Chest that it did not have the keys to the second floor at that time.

26. As a result, silt, dirt, dust, and debris continued to fall into the store and there was no protection from further pipes or objects falling through the ceiling of The Cedar Chest's store. Therefore, The Cedar Chest was forced to close its business during the roofing job.

27. Defendant Townmaker, L.L.C. informed The Cedar Chest when the roofing job was complete. Defendant also informed The Cedar Chest that the second floor of the building containing dust and debris would not be cleaned, that The Cedar Chest was clear to start cleaning up its shop and that Defendant had checked out the building and that it was safe to go back into the building.

28. Initially, The Cedar Chest, its co-owner Julie O'Keefe, and its employees began to clean up the dust covering the store. However, The Cedar Chest and Julie O'Keefe were concerned that the dirt, silt, dust and debris covering the store may be harmful to the Cedar Chest's employees, customers and Julie O'Keefe and decided to have professional testing done of the leased premises.

29. The testing determined that the dust covering the store contained asbestos from the old roofing materials being torn out and replaced and was extremely harmful, even deadly.

30. The Cedar Chest's leased business space had to be professionally cleaned and most of the items in the store were too contaminated to be salvaged.

31. The Cedar Chest had to remain closed and had to move its business to another location where its merchandize [sic] was limited to only one table rather than an entire store.

32. As a result of the Defendants' actions and inactions, Plaintiff, Julie O'Keefe d/b/a The Cedar Chest, has suffered great financial harm. The Cedar Chest was forced to  close its business, turn customers away, hire a professional to conduct testing for asbestos, hire a professional to abate the asbestos, and relocate its business to a much smaller consignment store where it was limited to one table for all its remaining merchandize [sic] that was not totally destroyed by contamination. The Cedar Chest has suffered lost sales, destruction of irreplaceable one of kind items and other significant financial losses. Also as a result of Defendants' actions and inactions, Plaintiff Julie O'Keefe individually has suffered personal injury and emotional distress by breathing in and being repeatedly exposed to the deadly contaminant of asbestos dust during the roofing construction, during the cleanup efforts, and by the tracking of the deadly asbestos dust in her car and her home.

*See* Exhibit A, at ¶¶15-33.

14.    The Petition from the Osage County Action seeks damages in excess of $75,000.00, punitive damages in excess of $75,000.00, costs, and pre-judgment and post-judgment interest. *See* Exhibit A.

15.    Above It All made a claim under the Policy, which was assigned a Claim Number of 2052278.

16.    On March 30, 2016, Above It All received a letter from R. Brent Cooper, Security National's legal counsel, advising that the Policy does not provide coverage to Above It All for

the Osage County Action. *See* March 30, 2016 Letter from R. Brent Cooper to Above It All, attached as **Exhibit B**.

17.     Above It All does not currently possess a complete copy of the Policy, and thus only has access to the provisions of the Policy cited by R. Brent Cooper in his denial of coverage letter.

18.     The Policy states Security National will pay sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which the insurance applies. *See* Exhibit B, Policy, at Section I, Coverage A(1)(a).

19.     The Policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." *See* Exhibit B, Policy, Section V(3).

20.     The Policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *See* Exhibit B, Policy, Section V(13).

21.     The Policy defines "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste.  Waste includes materials to be recycled, reconditioned or reclaimed." *See* Exhibit B, Policy, at Section V(15).

22.     The Policy contains the following exclusions:

COMMERCIAL GENERAL LIAIBLITY COVERAGE PART

A. Exclusion 2.f of SECTION I –COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY is replaced by the following:

Pollution

(1) "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

. . .

1. Punitive or Exemplary Damage

If a "suit" is brought against the insured for damages covered by this policy, seeking both compensatory and punitive or exemplary damages, we will afford a defense to such action. We will not have an obligation to pay any costs, interests or damages attributable to punitive or exemplary damages. This exclusion does not apply in any state where such endorsement is expressly prohibited by state law or insurance department regulations.

. . .

2. Asbestos

"Bodily Injury," "property damage", or "personal and advertising injury" arising out of:

a) The use of asbestos in constructing or manufacturing any good, product or structure; or
b) The removal of asbestos from any good, product or structure; or
c) The manufacture, transportation, storage, service, installation, use, sales, mining, distribution or disposal of asbestos or good or products containing asbestos; or
d) Inhaling, ingesting or prolonged physical exposure to asbestos goods or products containing asbestos; or
e) Any loss, cost or expense related to any of the above.

*See* Exhibit B, Policy, at Pollution Exclusion Endorsement, Punitive Damages Exclusion Endorsement, and Asbestos Exclusion Endorsement. *See* Exhibit B.

23.    Security National relies on the Pollution Exclusion for denial of coverage, although it refers broadly to "contaminants" rather than specifically to asbestos contamination. *See* Exhibit B.

24.     Security National also relies on the Asbestos Exclusion for denial of coverage, asserting that Above It All was "removing" asbestos "from any good, product or structure." *See* Exhibit B.

25.     Security National denies coverage to Above It All based on the Punitive Damages Exclusion. *See* Exhibit B.

26.     Security National denies that the Osage County Action's Plaintiffs' claims involve "bodily injury," asserting that they "seek[] only to recover for alleged physical anguish, emotional distress, worry, and apprehension from being repeatedly exposed to asbestos." *See* Exhibit B.

27.     Because Security National denied coverage and a defense of the Osage County Action to Above It All, Above It All was forced to hire its own legal counsel to defend the action, which is still pending.

28.     Above It All, through its personal legal counsel, submitted a letter to Security National, demanding that Security National assign defense counsel to defend Above It All in the Osage County Action.

29.     On November 28, 2016, Above It All received a second letter from R. Brent Cooper, which stated that Security National will not appoint defense counsel to defend Above It All. *See* November 28, 2016 Letter from R. Brent Cooper to R. Jay McAtee, attached as **Exhibit C**.

## COUNT I—BREACH OF CONTRACT

30.     Above It All hereby incorporates by reference all of the allegations contained in the preceding paragraphs 1-29 of this Petition as if fully set forth herein.

31.     On December 8, 2015, Above It All was named as a Defendant in the Osage County Action.

32.     Above It All timely made a claim under its Security National Policy when it learned that it was named as a Defendant in the Osage County Action.

33.     Security National has a contractual duty pursuant to the Policy to provide its insured, Above It All, with a defense to the Osage County Action.

34.     Security National has breached its contractual duty to defend Above It All regarding the Osage County Action.

35.     As a direct result of Security National's breach of its contractual duty to defend Above It All regarding the Osage County Action, Above It All has suffered monetary loss by being forced to hire and pay for its own legal counsel to defend the Osage County Action.

## COUNT II—BAD FAITH BREACH OF CONTRACT

36.     Above It All hereby incorporates by reference all of the allegations contained in the preceding paragraphs 1-35 of this Petition as if fully set forth herein.

37.     Despite Above It All's prompt notification of the Osage County Action and cooperation with Security National, Security National has breached the implied covenant of good faith and fair dealing contained within its contract of insurance by:

    a.  Forcing Above It All to file a lawsuit to obtain a defense of the Osage County Action when Security National knew such defense was owed to Above It All;

    b.  Refusing to properly and timely provide to Above It All a defense of the Osage County Action;

    c.  Refusing to consider the reasonable expectations of Above It All;

    d.  Knowingly misconstruing and misapplying the terms of the Policy;

e.  Failing and refusing to disclose to Above It All information relevant to the benefits provided under Security National's Policy; and

f.  Failing to adopt and implement reasonable standards for the prompt investigation and reasonable handling of claims arising under Security National's Policy of insurance.

## COUNT III—EXEMPLARY DAMAGES

38.  Above It All hereby incorporates by reference all of the allegations contained in the preceding paragraphs 1-37 of this Petition as if fully set forth herein.

39.  Security National's actions were willful, malicious, wanton and reckless, and exemplary damages should be assessed against Security National.

WHEREFORE, Plaintiff Above It All Roofing & Construction, Inc. respectfully requests that the Court:

(i)  Enter judgment against Defendant Security National Insurance Company for breach of contract in an amount in excess of the amount required for diversity jurisdiction pursuant to 28 U.S.C. § 1332, with said amount to be determined at the trial of this matter;

(ii)  Enter judgment against Defendant Security National Insurance Company for bad faith breach of contract in an amount in excess of the amount required for diversity jurisdiction pursuant to 28 U.S.C. § 1332, with said amount to be determined at the trial of this matter;

(iii)  Award Above It All exemplary damages against Security National for an amount in excess of the amount required for diversity jurisdiction pursuant to 28 U.S.C. § 1332, with said amount to be determined at the trial of this matter; and

(iv)    Award Above It All any and all other relief to which it may show itself entitled.


Respectfully Submitted,

**WILBURN, MASTERSON & FLEURY**


By _____
        MICHAEL J. MASTERSON, OBA# 5769
        AMY HAMPTON, OBA # 20235
        2421 E. Skelly Dr.
        Tulsa, OK  74105-6006
        (918) 494-0414
        FAX: (918) 493-3455
        E-Mail: mike.masterson@wilburnmasterson.com
        Attorney for Plaintiff

IN THE DISTRICT COURT OF OSAGE COUNTY
STATE OF OKLAHOMA



District Court Osage County, Okla.
FILED

DEC 8 2015

JENNIFER BURT??? Court Clerk
_____ Deputy

| | |
|---|---|
| JULIE O'KEEFE, d/b/a THE CEDAR CHEST, an Oklahoma business, and JULIE O'KEEFE, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>ABOVE IT ALL ROOFING AND CONSTRUCTION, INC., an Oklahoma Corp., and Townmaker, L.L.C., a Limited Liability Co.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. CJ-2015- 220

Judge _Kane_

ATTORNEYS' LIEN CLAIMED
JURY TRIAL DEMANDED

## PETITION

COMES NOW the Plaintiffs, Julie O'Keefe d/b/a The Cedar Chest, an Oklahoma business and Julie O'Keefe, an individual, and petition this Court for their claims against Defendants, Townmaker, L.L.C. and Above It All Roofing And Construction, Inc. In support of their Petition, Plaintiffs allege and state the following:

## I.
## JURISDICTION AND VENUE

1.     Plaintiff, Julie O'Keefe d/b/a The Cedar Chest (hereinafter "The Cedar Chest"), is an Oklahoma business located and doing business in Osage County, Oklahoma.

2.     Plaintiff, Julie O'Keefe, an individual, is a resident of Oklahoma and Virginia.

3.     Defendant, Above It All Roofing and Construction, Inc., is a domestic corporation, duly organized and existing under the laws of the State of Oklahoma.

4.     Defendant, Townmaker, L.L.C., is a domestic limited liability company, duly organized and existing under the laws of the State of Oklahoma.

1



5.      The actions made the basis of this suit and described more fully herein below occurred in Osage County, State of Oklahoma.

6.      This Honorable Court has jurisdiction over the parties and subject matter of this action.

7.      At all times material hereto The Cedar Chest was owned and operated in Osage County, State of Oklahoma.

8.      At all times material hereto Julie O'Kcefe, was present and working in Osage County, Oklahoma.

9.      At all times material hereto, Defendant Townmaker, L.L.C., is a domestic limited liability company owned and operated in Osage County, State of Oklahoma

10.     At all times material hereto, Defendant Above It All Roofing is a for-profit business owned and operated in Tulsa County, State of Oklahoma.

11.     This is an action for damages and punitive damages against Defendants in excess of the sum of $75,000.00, exclusive of costs and attorney fees.

## II.
## FACTS

12.     The Cedar Chest is a custom clothing and retail shop co-owned by Plaintiff Julie O'Keefe. Many items in The Cedar Chest's store are one of a kind and collector pieces.

13.     The Cedar Chest leased first floor business space from Defendant Townmaker, L.L.C. located at 521 Kihehah, Pawhuska, OK 74056.

14.     Defendant Townmaker, L.L.C. is the owner and landlord of the building in which The Cedar Chest leased its business space in February of 2015.

2

15.     During the lease term with The Cedar Chest, Defendant Townmaker, L.L.C. undertook to make repairs and/or improvements to the building's roof.

16.     Townmaker, L.L.C. hired Defendant Above It All Roofing to remove and replace the roof on the building being leased by The Cedar Chest.

17.     Townmaker, L.L.C. did not inform either Plaintiff that the building and/or the leased space contained asbestos-containing material ("ACM") or presumed asbestos-containing material ("PACM").

18.     Upon information and belief, Townmaker, L.L.C. did not maintain any records concerning the presence, location and quantity of ACM or PACM in the building, nor did it determine the presence, location and quantity of ACM or PACM in the building.

19.     Townmaker, L.L.C. did not inform either Plaintiff of the areas which contain ACM and/or PACM in which The Cedar Chest's employees may perform housekeeping activities which may be contacted during such housekeeping activities.

20.     On February 3, 2015, during the term of the lease, The Cedar Chest was open for business.   Without notice from either Defendant, Defendant Above It All Roofing and Construction began roofing construction on the building in which The Cedar Chest was located.

21.     While tearing off the old roof, an approximately 24 foot lead pipe fell through the ceiling of The Cedar Chest and landed about 2 feet from one of The Cedar Chest's employees.

22.     The roofers removed the pipe but left a hole in the ceiling and a broken ceiling tile hanging open from the ceiling of The Cedar Chest.

23.     As removal of the old roof continued, silt, dirt, dust and debris fell from the hole in the ceiling, ceiling tiles and molding of the walls around the leased space of The Cedar Chest

3

and covered the clothing, fixtures, display cases, furniture, and floor and floated in the air of The Cedar Chest's store exposing the employees of The Cedar Chest and Julie O'Keefe to the debris.

24.    Neither Defendant placed a tarp or any other containment device on the second floor of the building to preclude the falling silt, dirt, dust and debris into The Cedar Chest's store.

25.    The Cedar Chest requested a tarp or other containment device be placed on the second floor of the building.  Defendant, Above It All Roofing, informed The Cedar Chest that it was too late to do so.

26.    Defendant Townmaker, L.L.C. informed The Cedar Chest that it did not have the keys to the second floor at that time.

27.    As a result, silt, dirt, dust, and debris continued to fall into the store and there was no protection from further pipes or objects falling through the ceiling of The Cedar Chest's store. Therefore, The Cedar Chest was forced to close its business during the roofing job.

28.    Defendant Townmaker, L.L.C. informed The Cedar Chest when the roofing job was complete.  Defendant also informed The Cedar Chest that the second floor of the building containing dust and debris would not be cleaned, that The Cedar Chest was clear to start cleaning up its shop and that Defendant had checked out the building and that it was safe to go back into the building.

29.    Initially, The Cedar Chest, its co-owner Julie O'Keefe, and its employees began to clean up the dust covering the store.  However, The Cedar Chest and Julie O'Keefe were concerned that the dirt, silt, dust and debris covering the store may be harmful to the Cedar Chest's employees, customers and Julie O'Keefe and decided to have professional testing done of the leased premises.

4

30.     The testing determined that the dust covering the store contained asbestos from the old roofing materials being torn out and replaced and was extremely harmful, even deadly.

31.     The Cedar Chest's leased business space had to be professionally cleaned and most of the items in the store were too contaminated to be salvaged.

32.     The Cedar Chest had to remain closed and had to move its business to another location where its merchandize was limited to only one table rather than an entire store.

33.     As a result of the Defendants' actions and inactions, Plaintiff, Julie O'Keefe d/b/a The Cedar Chest, has suffered great financial harm.  The Cedar Chest was forced to close its business, turn customers away, hire a professional to conduct testing for asbestos, hire a professional to abate the asbestos, and relocate its business to a much smaller consignment store where it was limited to one table for all its remaining merchandize that was not totally destroyed by contamination.  The Cedar Chest has suffered lost sales, destruction of irreplaceable one of kind items and other significant financial losses.  Also as a result of Defendants' actions and inactions, Plaintiff Julie O'Keefe individually has suffered personal injury and emotional distress by breathing in and being repeatedly exposed to the deadly containment of asbestos dust during the roofing construction, during the cleanup efforts, and by the tracking of the deadly asbestos dust in her car and her home.

### III.

### CLAIM OF NEGLIGENCE
(Townmaker, L.L.C. – Landlord liability)

34.     Defendant Townmaker, L.L.C., the landlord, undertook to make repairs to the building in which The Cedar Chest was located and was leasing from Defendant Townmaker, L.L.C.

35.    Townmaker, L.L.C. failed to advise The Cedar Chest that the repairs to the roof were going to take place.  Because The Cedar Chest had no notice it was unable to cover or remove its merchandize from the store to protect it from the falling dust, debris, silt and dirt.

36.    Townmaker, L.L.C. did not ensure that a tarp or other measure was taken to preclude dust and debris, including asbestos dust, from entering the store of The Cedar Chest and covering its merchandize and exposing its customers and employees to asbestos.

37.    Townmaker, L.L.C. actions also did not protect the Cedar Chest from any additional falling pipes or other materials. Nor did Townmaker, L.L.C. determine and advise The Cedar Chest that the roofing materials contain or may contain asbestos.

38.    Townmaker, L.L.C. did not clean the asbestos containing dust and debris from the second floor of the building and advised The Cedar Chest that it was safe to re-enter the leased space and clean the dust and debris itself.

39.    As direct and proximate cause of the landlord Townmaker, L.L.C.'s negligent actions and inactions, The Cedar Chest suffered great financial harm.  The financial harm to The Cedar Chest includes, but is not limited to, lost sales, destruction of its merchandize, lost customers and business interruption. As a result, The Cedar Chest has suffered damages in excess of $75,000.00.

40.    As direct and proximate cause of the landlord Townmaker, L.L.C.'s negligent actions and inactions, The Cedar Chest also suffered great financial harm in mitigating its damages. Such mitigation damages include, but are not limited to, professional asbestos testing, professional asbestos abatement, payment for leasing new business space, lease payments made to Defendant for unusable business space as well as any medical treatment sought by its owners

and/or employees and paid for by The Cedar Chest. As a result, The Cedar Chest has suffered damages in excess of $75,000.00.

41.     Additionally, The Cedar Chest seeks punitive damages in excess of $75,000. Townmaker, L.L.C.'s actions and inactions were made in reckless disregard of the rights of The Cedar Chest as Defendant was either aware, or did not care, that there was a substantial and unnecessary risk that its conduct would cause serious injury to The Cedar Chest and its employees. Defendant's actions were unreasonable under the circumstances and there was high probability that its conduct would cause serious harm to the Cedar Chest in that falling dust, debris, dirt, and silt were likely results of removing and replacing an old roof especially when no tarp or other device is used and that the old roofing material may contain asbestos that is extremely deadly and would containment The Cedar Chest's merchandize.

42.     As direct and proximate cause of the landlord Townmaker, L.L.C.'s negligent actions and inactions, Julie O'Keefe, individually, has suffered physical injury and great mental and physical anguish, emotional distress, worry and apprehension from being repeatedly exposed to deadly asbestos dust. As a result, Plaintiff has suffered damages in excess of $75,000.00.

43.     Additionally, Julie O'Keefe seeks punitive damages in excess of $75,000.00. Townmker, L.L.C.'s actions and inactions were made in reckless disregard of the rights of Julie O'Keefe as Defendant was either aware, or did not care, that there was a substantial and unnecessary risk that its conduct would cause serious injury to Julie O'Keefe. Defendant's actions were unreasonable under the circumstances and there was high probability that its conduct would cause serious harm to Julie O'Keefe in that falling dust, debris, dirt, and silt were likely results of removing and replacing an old roof especially when no tarp or other device is used and that the old roofing material may contain asbestos that is extremely deadly and would

7

containment Julie O'Keefe's body, clothing, car and home thereby repeatedly exposing her to a known deadly contaminate.

## IV.

### CLAIM FOR NEGLIGENCE PER SE UNDER 29 C.F.R. 1910.1001(j)(3)(i)(ii)(iii)
### (Defendant Townmaker, L.L.C.)

44. Townmaker, L.L.C. was required to determine the presence, location and quantity of ACM and/or PACM at the work site and exercise due diligence in complying with requirements to inform employers and employees about the presence and location of ACM and PACM.

45. Townmaker, L.L.C. was required to maintain records of all information required to be provided by 29 C.F.R. 1910.1001 and/or otherwise known to Townmaker, L.L.C. concerning the presence, location and quantity of ACM and PACM in the building.

46. Townmaker, L.L.C. was required to inform employers of employees who will perform housekeeping activities in areas which contain ACM and/or PACM of the presence and location of ACM and/or PACM in such areas which may be contacted during such activities.

47. Townmaker, L.L.C. failed to determine the presence, location and quantity of ACM and/or PACM and failed to exercise due diligence to inform The Cedar Chest and its employees of the presence and location of ACM and PACM, failed to maintain records concerning the presence, location and quantity of ACM and PACM or if such records were maintained failed to check said records and communicate the information to The Cedar Chest and its employees, and failed to inform The Cedar Chest whose employees would be performing housekeeping activities in areas which contain ACM and/or PACM of the presence and location of ACM and/or PACM in such areas which may be contacted during such activities.

48. The failure by Townmaker, L.L.C. to meet the above three requirements either alone or together constitutes negligence per se under 29 C.F.R. 1910.1001(j)(3)(i)(ii)(iii).

49. As a direct and proximate result of the above failures, The Cedar Chest has been injured and has suffered great financial harm, including mitigating damages, as described above herein. The injury to the Cedar Chest is of the type intended to be prevented and The Cedar Chest is of the class to be protected by the statute.

50. Accordingly, The Cedar Chest seeks damages in excess of $75,000.00 and punitive damages in excess of $75,000.00 as Townmaker, L.L.C.'s failures, actions and inactions were made in reckless disregard of the rights of The Cedar Chest as Defendant was either aware, or did not care, that there was a substantial and unnecessary risk that its conduct would cause serious injury to The Cedar Chest and its employees.

## V.

## CLAIM OF NEGLIGENCE
### (Defendant Above It All Roofing and Construction, Inc.)

51. Defendant, Above It All Roofing, had a duty to determine whether the old roofing that it removed from the building contained asbestos and communicate such findings to Defendant Townmaker, L.L.C. and/or the Plaintiffs.

52. Defendant, Above It All Roofing, failed to determine whether the old roofing that it removed from the building contained asbestos, and/or failed to communicate such findings either to the landlord Defendant Townmaker, L.L.C. or the Plaintiffs.  Such failures were negligent, and were in reckless disregard for rights of the Plaintiffs.

53. Defendant, Above It All Roofing, had a duty to perform the roofing job in a workman like manner.

54. Defendant, Above It All Roofing failed to meet its duty by failing to ensure that a large pipe did not fall into The Cedar Chest's store, failing to place a tarp or other protective device on the second floor of the building to protect The Cedar Chest's store from falling dirt, silt, dust and

9

debris, and/or by failing to advise Plaintiffs and/or Defendant Townmaker, L.L.C. that the roofing project was going to begin so that Plaintiffs could take any necessary precautions to protect the merchandize, employees, customers or themselves. Such actions and inactions were negligent and in reckless disregard for the rights of the Plaintiffs.

55. As a direct and proximate cause of Defendant's actions, inactions, and failures, Plaintiffs have been injured and/or suffered great financial harm as described above herein. Accordingly, Plaintiffs seek damages in excess of $75,000.00 and punitive damages in excess of $75,000.00.

WHEREFORE, Plaintiffs, Julie O'Keefe d/b/a The Cedar Chest and Julie O'Keefe, individually, pray for judgment against each of the Defendants in an amount in excess of $75,000.00. Moreover, Plaintiffs pray for punitive damages against each of these Defendants in an amount in excess of $75,000.00. Plaintiffs additionally pray that the Court award to them all court costs, pre-judgment and post-judgment interest at the statutory rate and for such other and further relief as the Court may deem just and proper.

Respectfully submitted,

By: _Holly Nigh_

Michael L. Barkett, OBA #16171
Holly M. Nigh, OBA #17055
The Barkett Law Firm, PLLC
1408 S. Harvard Avenue
Tulsa, Oklahoma 74112
918.582.6900 – Telephone
918.582.6907 – Facsimile
mbarkett@barkettlaw.net
hnigh@barkettlaw.net

*Attorneys for Plaintiffs Julie O'Keefe d/b/a The Cedar Chest and Julie O'Keefe, indivdually*

10



**R. BRENT COOPER**
Board Certified - Personal Injury Trial Law
Texas Board of Legal Specialization

214-712-9501
Brent.Cooper@cooperscully.com

March 30, 2016

<u>**VIA CERTIFIED MAIL—RETURN RECEIPT REQUESTED #7196 9008 9111 2063 4672**</u>

Above It All Roofing & Construction, LLC
6575 E. Skelly Dr.
Tulsa, OK 74145

Re:    *Julie O'Keefe d/b/a The Cedar Chest, an Oklahoma Business, and Julie O'Keefe, an Individual, Plaintiffs, v. Above It All Roofing and Construction, Inc., an Oklahoma Corp., and Townmaker, LLC, a Limited Liability Co., Defendants;* Case No. CJ-2015-220; In the District Court in and for Osage County, State of Oklahoma
Claim No.:    2052278
Policy No.:    NA107340101
Date of Loss: 02/03/2015
Our File No.   2037-22010

Dear Mr. Wygle:

We are writing on behalf of Security National Insurance Company ("Security National") with respect to the above-referenced lawsuit. For reasons more fully discussed below, the Security National policy issued to Above It All Roofing & Construction ("Above It All") does not provide insurance coverage to Above It All for the above-referenced lawsuit.

## I.    FACTS

The following facts come from Plaintiffs' Petition filed on December 8, 2015. The Cedar Chest is a custom clothing and retail shop co-owned by Plaintiff Julie O'Keefe ("O-Keefe"). The Petition alleges that many of the items in the shop are one of a kind and collector pieces. Plaintiffs (The Cedar Chest and O-Keefe) leased the first floor business space from Defendant Townmaker, LLC ("Townmaker").

During the lease term, Townmaker undertook to make repairs and/or improvements to the building's roof. Townmaker allegedly hired Above It All to remove and replace the roof on the building. Plaintiffs alleges that Townmaker failed to inform Plaintiff that the building and leased space contained asbestos-containing material ("ACM") or presumed asbestos-

Founders Square  900 Jackson Street, Suite 100 Dallas, TX  75202
Telephone (214) 712-9500    Fax (214) 712-9540
www.cooperscully.com

Houston Office(713) 236-6800                                    San Francisco Office(415) 956-9700

D/939968v1



March 30, 2016
Page 2

containing material ("PACM").  Plaintiff also alleges that Townmaker did not inform O'Keefe or The Cedar Chest of the areas which contain ACM or PACM.

On February 3, 2015, without notice to Plaintiffs, Above It All allegedly began roofing construction on the building in which The Cedar Chest was located.  When Above It All allegedly tore off the old roof, an approximately 24 foot lead pipe fell through the ceiling of The Cedar Chest and landed about 2 feet from one of its employees.  The roofers removed the pipe but left a hole in the ceiling and a broken ceiling tile hanging open from the ceiling of The Cedar Chest.  As removal of the old roof continued, silt, dirt, dust, and debris fell from the hole in the ceiling, ceiling tiles and molding of the walls around the leased space, covering the clothing, fixtures, display cases, furniture, and floor and floated in the air of store.  This also allegedly exposed the employees of The Cedar Chest and Julie O'Keefe to the debris.

The store was forced to close its business during the roofing job.  Initially, O'Keefe and her employees began to clean up the dust covering the store; however, she was concerned that the dirt, silt, dust, and decries covering the store may be harmful to her employees and customers and she decided to have professional testing done of the leased premises.  The testing determined that the dust covering the store contained harmful asbestos from the old roofing materials being torn out and replaced.  The store had to be professionally cleaned and most of the items in the store were too contaminated to be salvaged.  The store allegedly remained closed and had to move its business to another location where its merchandize was limited to only one table instead of an entire store.

O'Keefe alleges that she has suffered personal injury and emotional distress by breathing in and being repeatedly exposed to the asbestos dust during the roofing construction, the cleanup efforts, and by tracking of the asbestos into her car and home.  Plaintiffs claim negligence against Above It All for failure of its duty to determine whether the roofing it has removed from the building contained asbestos, failure to communicate such finding in reckless disregard for the rights of the Plaintiffs, failure to perform the job in a workmanlike manner, failure to protect The Cedar Chest store from falling dirt, silt, dust, and debris, and failing to inform Plaintiffs and Townmaker that the roofing project was going to begin so that necessary precautions to protect merchandize, employees, customers, and themselves.  The Plaintiffs also seek punitive damages against Above It All.

## II.   POLICY

Security National Insurance Company issued to Above It All Roofing & Construction a Commercial Lines policy, bearing policy number NA107340101, with a policy period from 01/07/2015 to 01/07/2016 ("the Security National policy").  The Security National policy provides in relevant part:

March 30, 2016
Page 3

## SECTION I – COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.  **Insuring Agreement**

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

    > (1) The amount we will pay for damages is limited as described in Section III- Limits of Insurance; and

    > (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

    > No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments-Coverages A and B.

    b. This insurance applies to "bodily injury" or "property damage" only if:

    > (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

    > (2) The "bodily injury" or "property damage" occurs during the policy period; . . . .

    . . .

## SECTION V-DEFINITIONS

. . .

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person , including death resulting from any of these at any time.

March 30, 2016
Page 4

. . .

13.  "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

. . .

15.  "Pollutants" mean any solid, liquid, gaseous or thermal irritant or *contaminant*, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste."  Waste includes materials to be recycled, reconditioned or reclaimed.

\* \* \*

### CHANGES IN COMMERCIAL GENERAL LIABLITY

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.  Exclusion 2.f of **SECTION I - COVERAGES, COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** is replaced by the following:

**Pollution**

(1)  "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

This exclusion does not apply to:

(a)  "Bodily injury" if sustained within a building which is or was at any time owned or occupied by, or rented or loaned to, any insured and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests; or

(b)  "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire" unless that "hostile fire" occurred or originated:

March 30, 2016
Page 5

     (1)     At any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste; or

     (ii)     At any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations to test for, monitor, clean up, remove, contain, treat, detoxify, neutralize or in any way respond to, or assess the effects of, "pollutants".

  (2)    Any loss, cost or expense arising out of any:

     (a)     Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

     (b)     Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

. . .

**D.**    Additional Exclusions applicable to **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILTY** and **COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**

This insurance does not apply to:

1.    Punitive or Exemplary Damage

    If a "suit" is brought against the insured for damages covered by this policy, seeking both compensatory and punitive or exemplary damages, we will afford a defense to such action. We will not have an obligation to pay any costs, interests or damages attributable to punitive or exemplary damages. This exclusion does not apply in any state where such endorsement is expressly prohibited by state law or insurance department regulations.

2.    Asbestos

March 30, 2016
Page 6

"Bodily injury," "property damage", or "personal and advertising injury" arising out of:

a) The use of asbestos in constructing or manufacturing any good, product or structure; or

b) The removal of asbestos from any good, product or structure; or

c) The manufacture, transportation, storage, service, installation, use, sales, mining, distribution or disposal of asbestos or goods or products containing asbestos; or

d) Inhaling, ingesting or prolonged physical exposure to asbestos or goods or products containing asbestos; or

e) Any loss, cost or expense related to any of the above

\* \* \*

## III.   COVERAGE DISCLAIMER

Based upon the terms of the Security National policy and the allegations of Plaintiffs' petition, there is no coverage for the above-referenced lawsuit for the following reasons:

- The Asbestos Exclusion precludes coverage for all of the alleged damages against Above It All.  This exclusion applies to any loss, cost, or expense related to "bodily injury" or "property damage" arising out of the "removal of asbestos from any good, product or structure" and "inhaling, ingesting or prolonged physical exposure to asbestos or goods or products containing asbestos."  Here, Plaintiffs are alleging property damage to their merchandise as a result of the asbestos.  Further, Plaintiffs are alleging property damage for loss of use of the store while the store was being exposed to the asbestos dust and while being cleaned of the asbestos dust.  Also, O'Keefe alleges injuries as a result of breathing in the asbestos.  Based upon these allegations, the Asbestos Exclusion precludes coverage for all of the damages alleged against Above It All.

- The Pollution Exclusion also precludes coverage for the alleged damages because the petition alleges that asbestos caused contamination.  The pollution exclusion precludes coverage for "property damage" and "bodily injury" that "would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' at any time."  According to the Security National policy, "pollutants" mean any solid, liquid, gaseous or thermal irritant or *contaminant*, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste."   Because "pollutants" includes

March 30, 2016
Page 7

"contaminants," the pollution exclusion precludes coverage for Plaintiffs' damages which allegedly arose out of the asbestos contamination.

- In addition to the Asbestos and Pollution Exclusions, the Punitive Damages exclusion precludes coverage for the punitive damages sought from Above It All. The Security National policy states that Security National "will not have an obligation to pay any costs, interests or damages attributable to punitive or exemplary damages." Thus, the punitive damages sought from Above It All are not covered by the Security National policy.

- The Security National policy provides coverage for "damages because of 'bodily injury' or 'property damage' to which this insurance applies." "Bodily injury" means "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." Plaintiffs seek to recover only for alleged physical anguish, emotional distress, worry, and apprehension from being repeatedly exposed to asbestos. These allegations do not amount to "bodily injury" as defined by the Security National policy.

The purpose of this letter is to allow Security National to explain the bases for its declination of insurance coverage. Security National reserves all rights, terms, and conditions of the insurance policy, including, but not limited to, the right to deny coverage on the policy provisions quoted above. Any information developed by Security National in the course of this investigation or defense may be used by Security National to support the coverage defenses or to deny coverage. There may be other reasons why coverage does not apply and Security National does not waive its right to contest or deny coverage or the duty to defend for any other valid reason that may arise or is later discovered. Security National reserves the right to bring a declaratory judgment action or other legal action to determine its duties to Above It All, including, but not limited to, whether it has a duty to indemnify Above It All or whether coverage is, in fact, available under the Security National policy.

Security National's coverage position is necessarily based on information available to date. If you have any additional facts, materials, or arguments that you believe bear on the availability of coverage in this case, please notify us of those materials so that we may fully consider them. Finally, should any amended pleadings be filed against you in this matter, please notify us immediately.

Sincerely,

R. Brent Cooper
Robert J. Witmeyer

D/939968v1



# Cooper & Scully
*A Professional Corporation*

**R. BRENT COOPER**
Board Certified - Personal Injury Trial Law
Texas Board of Legal Specialization

214-712-9501
Brent.Cooper@cooperscully.com

November 28, 2016

**VIA FACSIMILE (918) 746-4334**

R. Jay McAtee
McAtee Law Office
1115 South Cincinnati
Tulsa, Oklahoma 74119

Re:     *Julie O'Keefe d/b/a The Cedar Chest, an Oklahoma Business, and Julie O'Keefe,*
        *an Individual, Plaintiffs, v. Above It All Roofing and Construction, Inc., an*
        *Oklahoma Corp., and Townmaker, LLC, a Limited Liability Co., Defendants*; Case
        No. CJ-2015-220; In the District Court in and for Osage County, State of
        Oklahoma
        Claim No.:     2052278
        Policy No.:    NA107340101
        Date of Loss:  02/03/2015
        Our File No.   2037-22010

Dear Mr. McAtee:

        This letter is in response to your letter to Kirk Nielsen at AmTrust Financial Services,
Inc., demanding that Security National Insurance Company ("Security National") assign defense
counsel to defend Above It All Roofing & Construction, Inc. ("Above It All") in the above-
referenced litigation. We have considered the additional information contained in your letter but
have determined that Security National has no duty to defend Above It All in the above-
referenced lawsuit. As a result, at this time, Security National will not appoint defense counsel
to defend Above It All.

        In your letter, you state that you believe the asbestos exclusion does not apply. However,
based upon the allegations of the Plaintiff's Petition and the terms of the asbestos exclusion, that
exclusion precludes coverage in this case. Indeed, the asbestos exclusion precludes coverage for:

        "Bodily injury," "property damage", or "personal and advertising injury" arising
        out of:

Founders Square  900 Jackson Street, Suite 100 Dallas, TX  75202
Telephone (214) 712-9500   Fax (214) 712-9540
www.cooperscully.com

Houston Office(713) 236-6800                              San Francisco Office(415) 956-9700

D/955579v1



November 28, 2016
Page 2

a)   The use of asbestos in constructing or manufacturing any good, product or
     structure; or

b)   The removal of asbestos from any good, product or structure; or

c)   The manufacture, transportation, storage, service, installation, use, sales,
     mining, distribution or disposal of asbestos or goods or products containing
     asbestos; or

d)   Inhaling, ingesting or prolonged physical exposure to asbestos or goods or
     products containing asbestos; or

e)   Any loss, cost or expense related to any of the above.

(Emphasis added). Thus, the plain language of the Security National policy's asbestos exclusion precludes coverage for any loss related to "property damage" or "bodily injury" arising out of the removal of asbestos from any structure. In this case, in paragraph 16 of Plaintiff's Petition, Plaintiff alleges, "Townmaker, L.L.C. hired Defendant Above It All Roofing to remove and replace the roof on the building being leased by The Cedar Chest." Then, in paragraph 30 of Plaintiff's Petition, Plaintiff alleges, "The testing determined that the dust covering the store contained asbestos from the old roofing materials being torn out and replaced and was extremely harmful, even deadly." Further, in paragraph 33 of Plaintiff's Petition, Plaintiff alleges the damages suffered arising out of the asbestos, including "Plaintiff Julie O'Keefe individually has suffered personal injury and emotional distress by breathing in and being repeatedly exposed to the deadly containment of asbestos dust during the roofing construction . . . ." Therefore, despite your contentions to the contrary, the Plaintiff's Petition alleges damages arising out of the removal of asbestos from the building being leased by The Cedar Chest. As a result, the asbestos exclusion (as well as all terms previously discussed in the March 20, 2016 correspondence) precludes coverage in this case.

     Security National's coverage position is necessarily based on information available to date. If you have any additional facts, materials, or arguments that you believe bear on the availability of coverage in this case, including any discovery materials that you believe establishes that the asbestos was not released from any roofing material, please provide those materials so that we may fully consider them. Finally, should any amended pleadings be filed against Above It All in this matter, please notify us immediately.

                                             Sincerely,

                                             R. Brent Cooper
                                             Robert J. Witmeyer

RBC/cm

⊕ 11/28/2016 10:55 AM CT          55550532                    →JayMcAtee                                    ☐ 1



## Cooper&Scully

A Professional Corporation

Founders Square   900 Jackson Street, Suite 100, Dallas, TX  75202
Telephone:  (214) 712-9500
Fax: (214) 712-9540

# Fax Cover Sheet

| | | |
|---|---|---|
| To | : R. Jay McAtee | **918-746-4334** |
| | McAtee Law Office | |
| From | : R. Brent Cooper | No. of Pages, Incl. Cover Sheet:          3 |
| | Robert J. Witmeyer | |
| Date | : November 28, 2016 | |
| Clt/Mtr# | : 2037-22010; O'Keefe v. Above It All Roofing | |
| Comments | : Please deliver as soon as possible.  Thank you. | |

*Important/Confidential:* This message is intended for the use of the individual or entity to which it is addressed. This message contains information from the law firm of Cooper & Scully, P.C., which may be privileged, confidential, and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately at our telephone number (214) 712-9500. We will be happy to arrange for the return of this message to us, via the United States Postal Service, at no cost to you.

Please call  (214) 712-9500 if you do not receive all pages.

D/956599v1




### IN THE DISTRICT COURT OF TULSA COUNTY
### STATE OF OKLAHOMA

### ORIGINAL SUMMONS

ABOVE IT ALL ROOFING &
CONSTRUCTION, INC., an Oklahoma
Corporation,

        Plaintiff,

vs.

SECURITY NATIONAL INSURANCE
COMPANY, a Delaware Corporation,

        Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

**CJ-2016-04372**

Case No.

Judge   **DAMAN CANTRELL**

DISTRICT COURT
**F I L E D**

DEC – 8 2016

SALLY HOWE SMITH, COURT CLERK
STATE OF OKLA. TULSA COUNTY

**To the above named Defendant:**

**Security National Insurance Company**
**% Oklahoma Insurance Commissioner**
**Five Corporate Plaza**
**3625 NW 56th, Suite 100**
**Oklahoma City, OK 73112-4511**

You have been sued by the above named Plaintiff, and you are directed to file a written answer to the attached petition and order in the court at the above address within twenty (20) days after service of this summons upon you exclusive of the day of service.  Within the same time, a copy of your answer must be delivered or mailed to the attorney for the Plaintiff. Unless you answer the petition within the time stated judgment will be rendered against you with costs of the action.

Issued this ___1___ day of _____Dec_____, 2016.

SALLY HOWE SMITH, COURT CLERK

By _____
    **Deputy Court Clerk**
    (Seal)

This summons and order was served/mailed on __12/1/16_____.
                          (date of service)

_____
**(Signature of person serving/mailing summons)**

YOU MAY SEEK THE ADVICE OF AN ATTORNEY ON ANY MATTER CONNECTED WITH THIS SUIT OR YOUR ANSWER.  SUCH ATTORNEY SHOULD BE CONSULTED IMMEDIATELY SO THAT AN ANSWER MAY BE FILED WITHIN THE TIME LIMIT STATED IN THIS SUMMONS.

### RETURN ORIGINAL FOR FILING

**RETURN/AFFIDAVIT OF SERVICE**
**IN THE DISTRICT COURT OF TULSA COUNTY**
**STATE OF OKLAHOMA**

**ORIGINAL SUMMONS**

ABOVE IT ALL ROOFING & CONSTRUCTION, INC., an Oklahoma Corporation, ) ) Case No. CJ-2016-04372

Plaintiff, ) Judge DAMAN CANTRELL

vs. )

SECURITY NATIONAL INSURANCE COMPANY, a Delaware Corporation, )

Defendant. )

DISTRICT COURT
FILED
DEC - 8 2016
SALLY HOWE SMITH, COURT CLERK
STATE OF OKLA. TULSA COUNTY

**PERSONAL SERVICE**

I certify that I received the foregoing summons the ____ day of ______________________ 2016, and that I delivered a copy of said summons with a copy of the petition and order attached to each of the following named defendants personally in __________________ County at the address and on the date set forth opposite each name, to wit:

| Name of Defendant | Address | Date of Service |
|---|---|---|

**USUAL PLACE OF RESIDENCE**

I certify that I received the foregoing summons on the ____ day of _____________, 2016, and that on _____________ I served _______________ by leaving a copy of said summons with a copy of the petition and order attached at _______________, which is his dwelling house or usual place of abode, with _____________, a person then residing therein, who is fifteen (15) years of age or older.

**CORPORATION RETURN**

Received this summons this ____ day of _________, 2016, and as commanded therein, I summoned the within named defendant, as follows, to wit: ______________________, a corporation, on the ____ day of _______________ 2016, by delivering a true and correct copy of the within summons hereof with endorsements thereon and a copy of the petition to _______________ he being the Treasurer, or other chief officer not being found in said County.

**NOT FOUND**

Received this summons this ____ day of _________________, 2016, I certify that the following persons of the defendant(s) within named not found in said County:

______________________________________________________________

**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at *www.usps.com®*.

OFFICIAL USE

Certified Mail Fee
$

12-1-16

Extra Services & Fees (check box, add fee as appropriate)
☐ Return Receipt (hardcopy)        $
☐ Return Receipt (electronic)      $
☐ Certified Mail Restricted Delivery  $
☐ Adult Signature Required         $
☐ Adult Signature Restricted Delivery  $

Postmark
Here

Postage
12.45

Total Postage and Fees
$

Sent To   Ok Ins. Commissioner
Street and Apt. No., or PO Box No.
City, State, ZIP+4®

PS Form 3800, April 2015 PSN 7530-02-000-9047      See Reverse for Instructions

7016 2070 0000 7393 7473

Fee for service $_____, N

Dated this ____ day of

Oklahoma

Process Server - Tulsa County, Oklahoma

I, __
thereon, acc

**SENDER: COMPLETE THIS SECTION**

- ■ Complete items 1, 2, and 3.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Oklahoma Insurance Commissioner
Five Corporate Plaza
3625 NW 56th, Suite 100
Oklahoma City, OK 73112-4511

Subscribed

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
9590 9402 1759 6074 5444 20

My commis

2. Article Number (Transfer from service label)

7016 2070 0000 7393 7473

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature              RECEIVED       ☐ Agent
X          OKLAHOMA INSURANCE DEPARTMENT  ☐ Addressee

B. Received by (Printed Name)       C. Date of Delivery
DEC 02 2016

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

DEC 05 2016

3. Service Type                          ☐ Priority Mail Express®
☐ Adult Signature                        ☐ Registered Mail™
☐ Adult Signature Restricted Delivery    ☐ Registered Mail Restricted
☒ Certified Mail®                            Delivery
☐ Certified Mail Restricted Delivery     ☐ Return Receipt for
☐ Collect on Delivery                        Merchandise
☐ Collect on Delivery Restricted Delivery ☐ Signature Confirmation™
                                         ☐ Signature Confirmation
☐ Restricted Delivery                        Restricted Delivery

Domestic Return Receipt

Deputy Court Clerk or Notary Public

**CERTIFICATE OF SERVICE BY MAIL**

I certify that I mailed copies of the foregoing summons with a copy of the petition and order attached to the following named defendants at the address shown by certified mail, addressee only, return receipt requested, on the 1st day of December, 2016, and receipt thereof on the dates shown:

| Name of Defendant | Address | Date of Service |
|---|---|---|
| Security National Insurance Company | Five Corporate Plaza | 12/2/16 |
| % Oklahoma Insurance Commissioner | 3625 NW 56th, Suite 100 | |
| | Oklahoma City, OK 73112-4511 | |

Signature of person mailing summons