**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| 1) ABOVE IT ALL ROOFING & CONSTRUCTION, INC.,    ) | |
|       ) | |
|       Plaintiff,    ) | |
|       ) | |
| v.       ) | Case No. 16-cv-00770-GKF-FHM |
|       ) | Judge Gregory K. Frizzell |
| 1) SECURITY NATIONAL INSURANCE COMPANY,    ) | |
|       ) | |
|       Defendant.    ) | |
|       ) | |

**MOTION OF DEFENDANT FOR SUMMARY JUDGMENT**
**AND SUPPORTING BRIEF**

**MOTION FOR SUMMARY JUDGMENT**

Defendant, Security National Insurance Company ("Security"), moves the Court, pursuant to Rule 56, F.R.Civ.P., to enter judgment in favor of Security and against Plaintiff for the reason that the undisputed facts establish as a matter of law:

1.    Above It All is not entitled to recover upon its claim for breach of contract;

2.    Above It All is not entitled to recover upon its bad faith claim.

**SUPPORTING BRIEF**

**STATEMENT OF MATERIAL UNDISPUTED FACTS[1]**

1.    Security issued a commercial general liability insurance policy to Plaintiff, Above It All Roofing and Construction, Inc. ("Above It All") with effective dates from January 7, 2015 to January 7, 2016 (Ex. 1).

2.    On February 3, 2015, Above It All was engaged in re-roofing a commercial

---

[1] With the exception of some deposition excerpts, all exhibits are documents previously submitted by the parties as undisputed facts whose authenticity and relevance is not disputed for purposes of this Motion.

building in Pawhuska, Oklahoma when a pipe was dislodged, falling through the ceiling of space occupied by a tenant, Julie O'Keefe, d/b/a The Cedar Chest (Ex. 2; Petition, Case No. CJ-2015-220, District Court, Osage County).

3.     On December 8, 2015, O'Keefe filed suit against Above It All in the District Court of Osage County (Ex. 2).

4.     On December 23, 2015, Above It All submitted notice of occurrence/claim and forwarded a copy of the Petition filed by O'Keefe in Osage County.  (Ex. 3.)

5.     In the Petition, O'Keefe alleged that building owner and Plaintiff's landlord, Townmaker, LLC, had hired Above It All to remove and replace the roof on the building and that while performing the project, a 24-foot lead pipe was dislodged, falling through the ceiling of Plaintiff's place of business.  (*Id,* ¶ 20, 21).  The incident allegedly caused silt, dirt, dust and debris to fall through the hole in the ceiling, covering clothing, fixtures and other Plaintiff's property within the leased space to be covered by the dust and also exposed O'Keefe and the employees to the debris.  The store was closed, and during cleanup, O'Keefe became concerned that the dirt, silt, dust and debris might be harmful and decided to have professional testing done. (*Id.* ¶ 28). The testing determined that the dust covering the store contained harmful asbestos from the old roofing materials being torn out and replaced and it was extremely harmful, even deadly. (*Id.* ¶ 30).  Plaintiff alleged that most of her property was too contaminated to be salvaged and that the store had to be closed and moved to another location due to the damage caused by the asbestos. (*Id.* ¶ 32). Plaintiff sought damages to her merchandise and store operations and for personal injuries arising from the release of the asbestos.

6.     On December 28, 2015 the adjuster assigned to the claim secured approval of the supervisor to refer the Petition and Policy to outside counsel for a coverage opinion (Ex. 4; Paul

Nielson depo, p. 117).

7.      On January 22, 2016 outside counsel, Brent Cooper, submitted a coverage opinion with attached proposed denial of coverage letter to be sent to the insured.  (Ex. 5; Garza depo, p. 31).

8.      The coverage opinion and proposed denial letter were subsequently reviewed and approved by the adjuster, supervisor, claims manager, and regional vice president for claims. (See Ex. 6).   All agreed with Cooper's recommendation that defense be denied due to applicability of the pollution and asbestos exclusions.  (*Id*.)

9.      On March 30, 2016, Security's outside counsel, Brent Cooper, sent a letter to the insured advising of the company's determination that under the facts alleged in the Petition, there was no coverage, due to the applicability of the pollution and asbestos exclusions.  The insured was invited to keep Security advised of any developments and, in particular, of the filing of any amended pleadings (Ex. 7).

10.     On November 28, 2016, in response to a letter from Above It All's counsel,  Brent Cooper submitted a response reiterating Security's position concerning the applicability of the subject exclusions.  (See Ex. 8).

11.     On December 1, 2016, Above It All filed this action in the District Court of Tulsa County, asserting claims against Security for breach of contract and bad faith.

12.     Security removed the action to this Court on January 3, 2017 and filed an Answer.

13.     On January 17, 2017, Security filed its Answer and also a Counterclaim for Declaratory Judgment (Doc. Nos. 11, 12).  In the Counterclaim, Security sought a declaration as to whether it was obligated to defend or indemnify Above It All under the Petition filed in the Osage County action.

14.    On April 7, 2017, Above It All's counsel in this action, served a Supplemental [Rule 26] Disclosure on Security's counsel.  Attached was a copy of an expert report prepared for co-defendant Townmaker's counsel in the underlying action, dated March 26, 2017 (the "Pinnacle Report") (Ex. 9).

15.    As a result of the scheduling conference on May 2, 2017, this Court, with consent of counsel, agreed to consider the coverage issue of a duty to defend, directing that simultaneous opening briefs be filed June 13, 2017 and that response briefs be filed July 14, 2017 (Doc. No. 21).

16.    On November 30, 2017, while the coverage issue was pending before this Court, Plaintiff in the Osage County action filed an Amended Petition, removing all allegations of asbestos or asbestos caused damage (Ex. 10).  The Court was advised of this development by supplemental brief filed by Above It All on December 12, 2017 (Doc. No. 31).

17.    On January 5, 2018, this Court entered its Opinion and Order addressing the coverage issues (Doc. No. 33).  In its opinion, the Court held, *inter alia*, 1) the allegations of the Petition in the underlying action were such as to trigger applicability of the pollution exclusion in the policy; and 2) the asbestos exclusion was inapplicable to the facts as alleged in the underlying Petition.

18.    At the hearing before this Court on January 11, 2018, the Court inquired of Plaintiff's counsel whether Plaintiff was seeking defense from Security in light of developments. Counsel advised that Above It All was seeking defense from Security (Transcript 1/11/18 at pg. 2, 5; Doc No. 54).

19.    On January 29, 2018, Security directed a letter to Above It All with copies to counsel in both the State and Federal actions, advising Above It All that Security agreed that

under the Amended Petition it was obligated to defend Above It All and to indemnify it against all damages claimed, except for any punitive damages that might be awarded (Ex. 11).

20.     Subsequently, counsel selected by Security, Michael Felty, entered an appearance for Above It All and has been defending Above It All from that point to the present. (*See* Osage County docket sheet). In addition, Security National after receiving statements of fees and expenses incurred by Above It All from April 1, 2017 forward, made reimbursement in full to Above It All by payment to its counsel for all fees and expenses incurred in the underlying action from April 1, 2017 to the time of its selected counsel entered an appearance (Ex. 12; Wygle depo, pp. 58-60).

21.     On July 6, 2018, Above It All served a Supplemental Disclosure purporting to enumerate its damages claims (Ex. 13). [2]

22.     Plaintiff's owner, Jonathan Wygle, could not identify any witnesses or documents to support the claim that Above It All's reputation was damaged by Security's actions. (Wygle dep. pg. 39; 149-150; Ex. 14).

## ARGUMENT AND AUTHORITIES

### SUMMARY

The Plaintiff was sued by O'Keefe in the underlying action, alleging that she suffered damage arising from Above It All's alleged negligence in causing asbestos to be released into her retail business. The policy issued by Security to Above It All contains a pollution exclusion, which excludes coverage for third-party claims which allege damage arising from the release of pollutants. The policy also contained an asbestos exclusion.

---

[2] The timeliness and adequacy of this Supplemental Disclosure is the subject of Security's Motion to Strike (Doc. ___), which has been fully briefed.

After referring Above It All's tender of defense to outside counsel, four levels of claims personnel, including two higher level management personnel, agreed with counsel's recommendation that coverage be denied due to applicability of the pollution and asbestos exclusions.  The insured was so advised.  In its opinion on the coverage issues, dated January 5, 2017, this Court agreed with Security's position with respect to the pollution exclusion, specifically holding (Opinion, p. 15) that the pollution exclusion applied so as to preclude any coverage under the policy for the allegations contained in O'Keefe's original Petition.

On November 1, 2017, O'Keefe filed an Amended Petition in which she omitted all allegations of asbestos.  On January 29, 2018, Security communicated to Above It All that in light of the filing of the Amended Petition, it would provide a defense for Above It All and agree to indemnify it for all actual damages which might be recovered by O'Keefe in the action.  In addition, Security agreed to, and subsequently did, reimburse Plaintiff for all fees and expenses incurred or paid by Above It All from April 1, 2017 up to the time its counsel entered an appearance.

Security did not breach the policy by refusal to defend under the original Petition, because it was not obligated to do so in light of the applicability of the pollution exclusion. Moreover, even if the duty to defend arose at some point subsequent thereto, beginning with the furnishing of Defendant's expert report from the underlying action in early April 2017, Above It All has suffered no damage from such possible failure to defend, because it has been fully reimbursed for intervening fees and expenses.

Security is entitled to judgment on the bad faith claim, because its position with respect to coverage was correct insofar as the pollution exclusion was concerned.  Accordingly, whether or not its investigation was adequate is irrelevant.  Moreover, alone among the policy exclusions,

the pollution exclusion is triggered and made applicable by even the "alleged" release of pollutants. So long as the Plaintiff, Ms. O'Keefe, the Third-Party Claimant alleged, as was the case here, no investigation, regardless of how detailed or expensive, could change or remove the applicability of this exclusion. Because Security was correct with respect to one aspect of its coverage denial and the other aspect was reasonable, there can be no liability for bad faith. In addition, even if a duty to defend arose in April 2017, Plaintiff has suffered no legally cognizable damages resulting from the alleged bad faith.

## I.      THE INSURANCE CONTRACT WAS NOT BREACHED

This Court summarized the requirement to establish a breach of insurance contract claim

in *Edens v. Netherlands Insurance Company,* (2015 WL 12585905), N.D. Okla. 2015):

> To recover on their breach of contract claim, plaintiffs must prove: (1) formation of a contract; (2) breach of the contract; and (3) damages as a direct result of the breach. *Digital Design Grp., Inc. v. Info. Builders, Inc.,* 24 P.3d 834, 843 (Okla. 2001). "Insurance policies are contracts interpreted as a matter of law." *BP Am., Inc. v. State Auto Prop. & Cas. Ins. Co.,* 148 P.3d 832, 835 (Okla. 2005). "When policy provisions are unambiguous and clear, the employed language is accorded its ordinary, plain meaning; and the contract is enforced carrying out the parties' intentions." *Id.* The court "will not impose coverage where the policy language clearly does not intend that a particular individual or risk should be covered." *Id.* at 835–36. "[C]ourts must examine the policy language objectively to determine whether an insured could reasonably have expected coverage." *Max True Plastering Co. v. U.S. Fid. & Guar. Co.*, 912 P.2d 861, 865 (Okla. 1996).

As this Court has previously determined, the pollution exclusion in the policy is clear and unambiguous and its wording negates any possible application of the efficient proximate cause doctrine. Under the allegations of the original Petition filed by Ms. O'Keefe, the pollution exclusion was triggered. Therefore, Security had no duty to defend Above It All against the allegations contained in the original O'Keefe Petition.

Second, even assuming for the sake of argument, the duty to defend arose in April 2017 or at some subsequent date before the filing of the Amended Petition on November 1, 2017,

Plaintiff has suffered no damage.  To the contrary, Plaintiff has been fully reimbursed by Security for all expenses incurred subsequent to April 1, 2017, the earliest possible date under this Court's January 5, 2018 ruling in which facts could have become known to Security which might trigger a duty to defend.

Moreover, as set forth in more detail in the following section, Security continues to maintain that the pollution exclusion is unique.  With one exception, it is the only exclusion in the policy which is triggered by the allegations made by the third-party.

Because the undisputed facts and law establish that Security did not breach its duty to defend under the policy and, even if it did, that Plaintiff has suffered no damage, judgment should be entered in favor of Security upon Plaintiff's breach of contract claim.

## II.     THE BAD FAITH CLAIM IS WITHOUT MERIT

Under Oklahoma law, the elements of a bad faith claim against an insurer are:

1.  Claimant was entitled to coverage under the insurance policy at issue;

2.  The insurer had no reasonable basis for delaying payment;

3.  The insurer did not deal fairly and in good faith with the claimant; and

4.  The insurer's violation of its duty of good faith and fair dealing was the direct cause of the claimant's injury.

*Ball v. Wilshire Ins. Co.,* 221 P.3d 717, 724 (Okla. 2009); *Bituminous Cas. Corp. v. Pollard,* 508 Fed. Appx. 780 (10th Cir. 2013).

If an insurer is determined to have been correct in the coverage position it took, no claim for bad faith will lie.  *See Edens v. Netherlands Ins. Co.*, *supra* 2015 WL 12585905 at*5.  If the insurer is later determined to have been incorrect in its coverage position, the critical question is whether the insurer had a good faith belief, at the time its performance was requested, that it had a justifiable reason for withholding or delaying payment under the policy.  *Ball*, *supra*, 221 P.3d

at 725.

An exception may exist in those instances where additional investigation would have produced facts which would have led to a different result.  *Timberlake Cons. Co., Inc. v. U.S. Fid. & Guar. Co.*, 71 F.3d 335, 343 (10th Cir. 1995).  If a more thorough investigation would not have led to a different result, a claim for bad faith predicated on lack of investigation will not lie. *Bannister v. State Farm Mut. Auto Ins. Co.,* 692 F.3d. 1117, 1129 (10th Cir. 2012).

Plaintiff's bad faith claim is factually and legally insufficient for several reasons.

First, Security's position that the allegations of O'Keefe's original Petition triggered the pollution exclusion, with the result that there was no coverage or potential for coverage under the policy is clearly correct.  That result is supported by every decision applying Oklahoma law applying the pollution decision as well as by this Court's Opinion and Order on January 5, 2018. (*See Bituminous Gas. Corp. v. Cowen Construction, Inc.*, 55 P.3d 1030 (Okla. 2002); *Bituminous Gas. Corp. v. St. Clair Lime Co.,* 69 F.3d 547 (10th Cir. 1995); *Certain Underwriters at Lloyd's London v. B3, Inc.,* 262 P3d 397 (OK. Civ. App. 2011).

Second, Security clearly had a reasonable basis for its position as evidenced by the authorities cited in the briefing on this subject and the Court's conclusion.  Likewise, while the Court determined that Security's position on the asbestos exclusion was incorrect, there was no applicable Oklahoma authority on that issue.  Cases from other jurisdictions, as briefed by the parties, supported either conclusion.  In any event, nothing implies or suggests that Security's position with respect to the asbestos exclusion was not a reasonable one based on the absence of clearly defining precedent at the time. *(See Ball v. Wilshire Ins. Co., supra,* 221 P.3d at 725.

Third, Plaintiff has and will undoubtedly argue that the foregoing arguments are negated by the failure to conduct a full, reasonable investigation.  Any such argument, however,

necessarily runs afoul of the principle that failure to conduct a full or adequate investigation has legal significance only if such an investigation would have led to a different result. *See Bannister v. State Farm Mutual Auto Ins. Co.* 692 F.3d 1117, 1128 (10th Cir. 2012). Here, because of the peculiar and unique nature of the pollution exclusion, investigation was not only unnecessary but could not produce a different result until such time as Ms. O'Keefe abandoned her allegations that her damages were caused by the release of a pollutant (asbestos).

This discussion and argument is, Security acknowledges, inconsistent with statements made by this Court at pp. 22-25 of its January 5 Opinion. Security respectfully submits, however, that the Court's Opinion was, to this extent, erroneous. Security asks the Court's indulgence while it now explains the basis for its contention and, the implicit contention, that the Court should reconsider and/or withdraw the portion of its Opinion that suggests that the applicability of the pollution exclusion could be affected by discovery of facts other than those then set forth in the underlying Petition.

With one exception, the pollution exclusion in the policy is unique.[3] Only the pollution exclusion (along with the fungi or bacteria exclusion)[4] contains the following language "actual, alleged or threatened" release of pollutants (pollution exclusion) or exposure to fungi or bacteria (fungi or bacteria exclusion). Review of the other exclusions in the policy reflect that they are typically phrased in terms of "arising out of" or which are framed in terms of activities which fall under certain type of specialized coverages, e.g. completed operations.

The significance of this unique aspect of the pollution exclusion is that, alone among the exclusions (with the exception noted), the exclusion is triggered by the allegations of the third-

---

[3] The policy exclusions may be found first in the main CGL Policy Form (Ex. 1 pp. 29-33). Additional exclusions, including the revised pollution exclusion applicable here appear in an endorsement entitled "Changes in Commercial General Liability" (Ex. 1 pp. 14-18). An additional series of exclusions relating to particular types of claims are contained in separate endorsements appearing generally at pp. 51-59 of the policy. Page references are to numbering, which has been added at lower right corner of each page.

[4] Ex. 1; at p. 55

party claimant.  If that third-party claimant, as did Ms. O'Keefe here, alleges that the damage was caused by release of a pollutant, the pollution exclusion is applicable.  That being the case, it logically follows that no amount of investigation can change the result if the pollution exclusion has been triggered by the allegations contained in the Petition filed by the third party.

This analysis serves to explain why decisions in dealing with the pollution under Oklahoma law, both state and federal, routinely rest those decisions upon the allegations contained in the underlying claim.  *See Bituminous Gas. Corp. v. Cowen Construction, Inc.*, 55 P3d 1030 (Okla. 2002); *Bituminous Gas. Corp. v. St. Clair Lime Co.,* 69 F.3d 547 (10th Cir. 1995); *Certain Underwriters at Lloyd's London v. B3, Inc.,* 262 P.3d 397 (OK. Civ. App. 2011). No reference is made in any of these cited decisions to the possibility that coverage might exist if discovery or investigation were to reveal that the facts are different than those as alleged in the underlying action.  Indeed, two decisions by Judge White in the Eastern District of Oklahoma involving the same insured and the same underlying litigation, but involving different insurers, illustrate this point.

In *Colony Insurance Company v. Bear Productions, Inc.*, 2013 WL 1286191 (E.D. Okla. 2013), Judge White ruled that the insurer had no duty to defend its insured in an environmental lawsuit, due to applicability of the pollution exclusion and based on the allegations in the underlying action.  The pollution exclusions in both the underlying and umbrella policies at issue there contained the same "actual, alleged or threatened" language as contained in the policy at issue here.  In his opinion, Judge White made it a point to add emphasis to quotes from the excerpts from the policy, emphasizing the "alleged" in the policy exclusions.  After reciting the familiar Oklahoma principles relating to duty to defend and acknowledging the usual obligation to look beyond the precise allegations of the pleading, the Court concluded (again adding

11

emphasis to the "alleged" in the pollution exclusion) that no possibility of coverage existed in light of the allegations in the underlying action.  This conclusion applied, even if the claims in the underlying action were shown to be groundless.

In the second decision, *Star Insurance Co. v. Bear Productions, Inc.,* 983 F.Supp. 2d. 1347 (Ed. Okla. 2013), Judge White reached the same conclusion, again applying a pollution exclusion containing the "actual, alleged or threatened" release of pollutants as in the earlier opinion, Judge White chose to add emphasis to all references to the exclusion to the word "alleged".  The Court concluded that there was no potential of liability under the policies in light of the allegations in the underlying action, noting "the primary policy specifically excludes coverage for **allegations** of pollution". (emphasis added).

Security of course recognizes that, under Oklahoma law, the duty of the insurer to defend is not to be determined solely by refence to the allegations in the underlying action but by also by facts that are readily knowable at the time of notice or request for performance is given.  *See First Bank of Turley v. Fid. and Deposit Ins. Co. of MD*, 928 P.2d 298 (Okla. 1996).  However, insofar as Security can determine, none of those decisions involve provisions containing such language involve provisions such as the pollution exclusion here in which the potential for coverage is determined by the allegations made in the underlying action rather than the underlying facts.

Moreover, the "knowable facts" principle must be considered with a corollary rule, i.e., that the duty to investigate may form the basis of a bad faith claim only if it can be shown that performance of an investigation would lead to a different result.  *Bannister v. State Farm Mut. Ins. Co.,* 692 F.3d 1117, 1128 (10th Cir. 2012).

Here, however, in light of the specific wording of this specific pollution exclusion,

12

investigation could not logically lead to a different result.  If, as the pollution exclusion clearly states, it is triggered by "allegations of pollution", then it necessarily follows that additional investigation could not lead to a different result.  So long as the Third-Party Claimant is alleging damages caused by pollution, the exclusion applied to defeat coverage.  Therefore, investigation could not produce a different result, and a failure to investigate cannot afford the basis for imposing liability for bad faith.

Finally, Above It All has suffered no legal cognizable damages caused by the alleged bad faith.  The damages claimed are set forth in a Supplemental Disclosure (Ex. 13).  None of the elements claimed is recoverable.

(1)     Because Security had no duty to defend before April 1, 2017, fees and expenses incurred by Above It All before that date are not compensable.

(2)     Above It All's claim for fees in this action are recoverable, if at all, only through a post-trial motion.

(3)     Damages for mental anguish are not recoverable by a corporation.  *See All Comp. Const. v. Ford,* 999 P.2d 1122, 1122-3 (OK Civ. App. 2000).

(4)     Diminution of gross revenues, even if a causal relation could be established, is not a legally cognizable measure of damages.  *See Florafax International, Inc. v. GTE Market Resources, Inc.* 993 P.2d 282-291 (Okla. 1997)

(5)     Above It All's claim for damage to its reputation has no evidentiary support.  *See* Ex. 14.

## CONCLUSION

For the reasons state, Security respectfully submits that judgment should be entered in favor of Security on all claims asserted by Above It All in this action.

Respectfully submitted,


*/s/ George W. Dahnke*
George W. Dahnke, OBA No. 2131
Doerner Saunders Daniel & Anderson LLP
105 N. Hudson Ave, Suite 1000
Oklahoma City, OK 73102-4805
Telephone: 405-319-3500
Facsimile: 405-319-3509
Email: gdahnke@dsda.com
***Attorney for Defendant***

## CERTIFICATE OF SERVICE

I hereby certify that, on the 4th day of September, 2018, I filed the foregoing document with the Clerk of the Court via CM/ECF.  Based on the records currently on file in this case, the Clerk of the Court will transmit a Notice of Electronic filing to the following registered participant(s):

Michael J. Masterson, OBA No. 5769
Amy Hampton, OBA No. 20235
Wilburn, Masterson & Fleury
2421 E. Skelly Dr.
Tulsa, OK  74105-6006
Telephone:  (918) 494-0414
Facsimile:  (918) 493-3455
mike.masterson@wilburnmasterson.com
***Attorney for Plaintiff***


*/s/George W. Dahnke*
George W. Dahnke


4758775.1

14